Good morning, counsel. Let me indicate to you that Justice Chapman is the third member of this panel, and she is not able to be here today. Of course, there's an audio recordation of your argument, and she'll be listening to that. So let's take up the first case set at 10 o'clock, which is Capital One v. Demond. Argument from the appellate. Thank you, Your Honor. May I please report? This case is based on some credit card claims by Capital One. It was arbitrated with an award in favor of Tom Demond. Capital One rejected the award, and there was a jury trial on the case, resulting in a jury verdict in favor of Capital One for $11,500 approximately. The first point on appeal is that the trial court heard by failing to direct the verdict for the defendant and by denying his motion for judgment not to stand in the jury. Now, the standard is that there's no evidence that the jury could have believed on one of the elements of the case. And we've cited a case for that proposition, Charbonneau v. Hillborn. There's other cases, of course, that say the same thing. And in this case, the law established in Illinois, at least, on these credit card accounts is that each time the cardholder uses the credit card, a separate contract is created between the cardholder and the credit card company. And the cases that I cited on that are Garber v. Harris Trust, 1st District, 1982, Razor Capital v. Antal, 2nd District, 2012, Portfolio v. Feldman, 1st District, 2009. And the amended complaint on which the case was tried, which is in the appendix of the appellant's brief at page A6, seems to be based on that theory because it alleges in paragraph 1, by virtue of the use of the card by the defendants, which were Thomas DeMond and Laurie DeMond, the case against Laurie DeMond was dismissed without prejudice. The reason wasn't stated, but she was not in the case. Anyway, continuing, agreed to the terms governing the use of the card. It said terms are attached here too and made a part hereof. And they attached a so-called terms of the agreement, which are unsigned documents that are allegedly mailed to the cardholders. And this one attached to the complaint and the amended complaint in Exhibit 10. And the evidence were all the same, which was dated in February 2010. Now, there was only one witness who was basically a records type person. I'm here and here's all the records of Capital One, which were printed out from their computer. And her name was DeMichelle Satterwhite. And she admitted, and we quote from her testimony at page 2 of the reply brief question, And with respect to the amount that is claimed now, you have no evidence that any of the transactions leading to the current balance, the ones that are in Exhibit 8, were done by Tom DeMond. Answer, that's right. Question, as opposed to Laurie DeMond or somebody else. Answer, yes, sir. Question, so you can't testify that any of the transactions that were done after the account was fully paid were done by Tom DeMond. Correct. Answer, yes, sir. And then at page 4, quote, so you can't say that Tom DeMond did any transaction after Exhibit 10 was mailed in February 2010. Is that a correct answer? Yes, that's the so-called credit card agreement. So there's two points here. One is there's no evidence that the defendant used the credit card after the account was admittedly fully paid on November 9, 2009. And the sole witness admitted that repeatedly. In order to establish a case against Tom DeMond, there has to be some evidence that he entered into any of these contracts, which are individual contracts, every time the card is used. There is no such evidence. There's a judicial admission by the plaintiff's only witness that that didn't happen. They have no evidence to establish that. All they had was evidence that somebody used the card after November 9, 2009. They can't say whether it was Tom DeMond, Lori DeMond, or somebody else. And that does not establish a case against Tom DeMond, that he entered into a contract each time the card was allegedly used after that date. It also does not establish that he agreed to the terms of the only cardholder agreement that was identified, Exhibit 10, attached to the complaint, an amended complaint, and admitted into evidence over objection, which admittedly was dated in February 2010. And the only witness admitted that the plaintiff has no evidence that Tom DeMond used the credit card after the date the so-called card agreement was issued and allegedly mailed to him. So there's just no evidence to establish that there was any contract after the account was admittedly fully paid with the defendant, Tom DeMond. We would request judgment be entered in favor of defendant Tom DeMond on the grounds that there's a total absence of evidence that he entered into any contract with the plaintiff by making a purchase using the credit card after the account was admittedly fully paid. The other point raised on appeal, which is, of course, in the alternative to the judgment NOB and directed verdict issues in Point 1, is that there were some errors in the admission of evidence which was misleading to the jury and prejudicial to Tom DeMond. Now, Exhibit 2, which is the credit card application, was admitted into a copy, was entered into evidence over objection of Tom DeMond, who had filed a verified answer denying the allegations that he had signed that. It was admitted as a business record. Signed what? Signed what, the agreement or what? This was the credit card application. I'm sorry, not an agreement. So at the beginning, there was a credit card application. He denied that he had signed it. It had the signature of Lori DeMond and Tom DeMond on it. And it's Exhibit 2. What date is that? I think there's a copy. It's early on. I believe there's a copy. It was considerably before 2007. I can say that. And there might be a copy in the appendix. I didn't recall whether there was. But it is Exhibit 2 in the exhibits. It was admitted over objection as a business record. But it was admitted, obviously, to prove that Tom DeMond signed it. And the law in business records is it has to be a record of the business of Capital One. And the mere fact that it received a copy of a document, allegedly signed by somebody else, that it puts into its file does not make it a business record. We've cited several cases for that proposition. Benford v. Chicago Transit, 1st District, 1973. APA v. National Bank, 1st District, 2007. Galeno v. Economy Fire and Casualty, 1st District, 2012. Plus Supreme Court Rule 236. The second objection to Exhibit 2, the application, is that the original was not produced. It was just a copy. And there was no evidence of its authenticity, no evidence of Capital One's diligence to try to obtain the original or why it didn't obtain the original. It just said, here's a copy. That's good enough. We objected. We cite Sears Roebuck v. Seneca, 1st District, 1993, on that proposition, as well as Illinois Rules of Evidence 1002, 1003, 1004. With respect to Exhibit 8, that was the group exhibit of credit card statements, basically bills for the account after it was admittedly fully paid. There was an earlier exhibit, Exhibit 3, which had some statements, but admittedly after Exhibit 3 it was fully paid on November 9, 2009. And for Exhibit 8, the Ms. Setter's wife admitted that it contains none of the transaction documents. If a customer goes to a restaurant, signs a slip, it had none of those original documents. In fact, according to her, Capital One never sees those documents. All they get is electronic transmission. But if they want to get the documents, they can get them from the merchants, but they made no effort to do so in this case. So it's basically a bill based on original documents which were never produced as a foundation. Over-objection. It would submit that there was no foundation to submit the bills when the transaction documents that are signed by the person and those transaction documents would indicate who did the transaction. And Capital One, even though we'd gone through an arbitration and then a trial, made no effort to get those documents. They admitted that. She admitted that. So we object to Exhibit 8. Exhibit 10 was the unsigned customer agreement that's dated in February 2010. It's the only alleged customer agreement that was either attached to the pleadings or offered into evidence. And admittedly, there was no foundation showing that Tom Demond used a credit card after that date. So there's no evidence that he could have agreed to those terms by using a credit card after that date. So it was without foundation. Getting back to the judgment notwithstanding the verdict issue, the law is that a separate contract is created between the cardholder and the credit card company each time the credit card holder uses the credit card under the terms of the cardholder agreement at the time of such use. There's absolutely no evidence to establish any of those elements that Tom Demond entered into any contract under any terms with the plaintiff after, admittedly, the account was fully paid. So we ask for judgment in favor of Tom Demond. Thank you, Counsel. Argument for the affidavit. May it please the Court. The defendant said there was really three issues on this appeal, Judge. Counsel, you are Mr. Your name, please. Michael Bablow. Thank you. I'm sorry about that. It's a denial of a judgment notwithstanding the verdict. The burden on the movement on a judgment notwithstanding the verdict is substantial. It's not just let's retry it and let the judge substitute his or her reading of the case. It's more of is the evidence so overwhelming to favor the movement that no contrary verdict could be favored? That is a burden. That is a strenuous burden to meet, especially when you're admitting all the evidence as it's submitted to the court for the purposes of that motion. The evidence before the court was really threefold. The first was the testimony of Satterwhite from Capital One. She stated that the plaintiff issued a credit card. The credit card was used by the statements that were issued and sent to the defendant that the receipt's pending on the account and the amount was still due and owing. There was also document evidence, as we stated earlier, the application, customer agreement, and the statements. The application that was submitted to the jury shows the personal information of the defendant along with a signature and a request for an issuance of a credit card. Second is the statements, which show use of the card, payments on the card, as well as cessation of payments on the card, and then an amount due and owing six months after the last payment was received by Capital One. And the last document is the customer agreement, which sets forth certain terms of use of the credit card, including a promise to pay jointly for use of the card individually or by the co-applicant, which was Lori DeMond in this case, or even if you don't sign a charge slip, even if you just swipe it as we do every day at the gas station, you still have to pay for those charges. The customer agreement also states that the nonpayment result in the default of the contract between the parties. That was the documentary evidence given to the jury, as well as the evidence of the testimony of the plaintiff's witness. The defendant did not testify. The defendant did not come to court and say, I never made these charges, never stated I'm someone else who used this card, never stated I didn't have the card besides his general denial. But nothing was put before the jury to explain his side of the story. Instead, the defendant focused on the fact that the card was paid to zero in November 2009, and then it was charged up again for the balance due and owing at the time of the hearing. The defendant spent a great deal of time using that November 2009 date as kind of a linchpin to his case as his defense. This was paid in 2009. He didn't have any proof there after. It's reasonable to, a reasonable conjecture to say that the jury inferred from that. The defendant's not even denying that he had the credit card. He's just denying that he used the credit card after 2009. That's a reasonable inference that could be drawn from the jury. And the court should not say, well, that inference couldn't be drawn or, you know, reasonable minds could not find that inference. The second part is the defendant brings up the slips, the charge slips. As I earlier stated, the customer agreement says you owe even if you just swipe the card with no charge. The only time this was in the testimony, the only time that Capital One will request a charge slip is when somebody challenges a charge on the account. The statements tell you you have 30 days to challenge any of these statements. When you get a statement in the mail, you have 30 days to challenge any charge on this as being fraudulent or not made by you or whatever the case may be. And once you do that, Capital One will then order the charge slip to see who made the charge. If there's no challenge, it's presumed to be an accurate statement of what happened on the account. So the defendant's focus on what the documents may prove is great at the time of trial, but it's not for this hearing or for the hearing on a motion for judgment notwithstanding the verdict. You don't retry the case at that point. What you do is you look at the evidence and you say, in reasonable minds, well, let's put it this way, Ken. Does it overwhelmingly favor the movement to show that there is no evidence or that the jury's verdict cannot stand? What you have here is a stack of evidence behind the plaintiff and the defendant who did not appear just saying, well, you don't have a charge slip or you were not there to see the guy swipe the card. I don't think that the court should come in and state now, substituting his judgment for the jury, to state that there was no evidence or inferences could be drawn from that evidence to show that there was a use of the card creating a contract between the parties. I believe the trial court should be affirmed on denying the motion for judgment notwithstanding the verdict. Counsel, did the trial court, in admitting exhibits 2, 8, and 10, give some reasoning for admitting those and denying the defendant's objection to the admission of those? Just generally that there are business records under Rule 236. Nothing, not a great deal of, you know, it didn't expound on that a great deal. The business records, and what we're talking about here is three exhibits, the application, the bulk statements, and the customer agreement as the business records. The admission of any evidence at trial is in the sound discretion of the trial court, and we're here on the abuse of discretion standard, which abuse of discretion is found only when a reasonable person could not come to the trial court's view. You're looking at three documents, three sets of documents, I'll say, using sets. The application is a document that is typewritten by Capital One, sent to a prospective cardholder to be completed with personal information in the signature. To state that it's created by a third party or by someone else other than the plaintiff isn't accurate. The defendant's quite cited three cases to argue against that the third party document is not a business record, like Apple, Galeno, and Benford. Those cases are more, are distinguishable on the grounds that those cases dealt with such things as bank records or letters from a doctor that are parties that are not part of the case. Plus, they're not regular documents used by the movement in that case. In this case, we have an application testifying that this is the application that our client uses to send out to prospective cardholders. And it's used in the normal course of business, and it's allowed in as a business record. Whether somebody else writes on it, completes it, adds some information, doesn't change the fact that it is a business record because it's used in normal course of business. And it's stored in the normal course of business, and it's their regular course of business to issue this to a prospective cardholder. The other part about the originality of the, whether we need the original at hearing, the defendant never called the authenticity into question on any of the documents until trial. It was an argument of convenience at trial to keep the documents out. This case was pending for a great deal of time. There was never a request for an original document through discovery. Never a statement in court or argument in court that these were somehow prejudicial or somehow unbelievable because they're copies. And it was just an argument of convenience to now say at trial, well, I need to see the originals. But there was nothing given besides asking for the originals. The statements in customer agreement are documents where our client testified that the statements are monthly statements, generated every month, mailed to the defendant to show the charges on the account, the payments on the account, the amount due, the interest rate, and all of that. We all know how credit cards work. We see them all the time, regular monthly statements. The second is the customer agreement, which is the terms of the agreement between the parties. Also mailed to a defendant February 10th. Whatever the 2010 statement says enclosed is the customer agreement. That's the normal course of business. Our client testified that it's normal course of business to mail these out every month or to mail the customer agreement when it becomes part of the case or part of the account. And that it's normal course of business to store these electronically. The argument regarding the originals of those two docs is inaccurate because the originals are sent through the mail to the defendant. The defendant has a copy of the original. All my client has is the electronic copies that they keep after they mail the original. So the originals would not be at trial unless the defendant brought them in. And for that reason, besides the testimony elicited, my client has set forth that the documents were all generated by Capital One, stored in a normal course of business, and were made at the time of mailing the statements or mailing the application. And they're business records, clearly business records. They should have been admitted. Once they're admitted, there's no prejudice for a new trial for the defendant if the business records were properly admitted. Thank you. Thank you, Counselor. Reid Butler. Just a few points, Your Honor. On the admission of the exhibits, the transcript is fairly brief, but there were extended arguments along the lines that I'm making now that I made to the trial judge. And basically, he said, well, I think the business records are, well, I'm going to let it in as far as the foundation issues that were raised. But there were extensive objections and rulings of that type. The testimony of Ms. Satterwhite really constitutes judicial admissions. I mean, she admitted that the documents cannot be interpreted to show an account that Tom DeMond used the credit card to create an independent contract after the account was fully paid, November 9, 2009. And there's no evidence he used the credit card after the so-called customer agreement was mailed and issued in February 2010. She established the date that it was supposedly mailed. So while Counsel for Capital One argued quite a bit about what the customer agreement provides, it's not signed by anybody. It can't possibly constitute a contract where the alleged party that's bound by it never used the credit card after allegedly receiving it. It can't possibly constitute a contract, and that's what the law provides. So the bottom line is that admittedly, by Capital One, Tom DeMond did not use the credit card after November 9, 2009, when it was fully paid. And admittedly, by Capital One, he did not use the credit card after the customer agreement was created and mailed in February 2010. So we would ask for judgment in favor of Tom DeMond. Thank you, Counsel. We'll take this case under advisement and issue a written ruling. All right, let's take up the next case.